**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Russ Kendig**
**United States Bankruptcy Judge**

**Dated: 12:22 PM February 2, 2021**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| ERIC JOHN HORVATH AND | ) | CASE NO. 10-60520 |
| LAURIE LYNN HORVATH, | ) | |
| | ) | JUDGE RUSS KENDIG |
| Debtors. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | |

Debtors reopened their chapter 7 bankruptcy case to file a motion to avoid a judgment lien first recorded in 2009. The lienholder, First Ohio Community Federal Credit Union ("First Ohio") objects to avoidance. The court held a hearing on October 26, 2020. Nicole Rohr-Metzger,[1] counsel for Debtors, and Stephen Ginella, counsel for First Ohio, participated in the hearing. Both parties declined to submit additional briefs on the issue and the court took the matter under advisement.

The court has subject matter jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference issued by the United States District Court for the Northern District of Ohio. General Order 2012-7. This is a statutorily core proceeding under 28 U.S.C. § 157(b)(2)(K). The court has authority to enter final orders in this matter. Pursuant to 28 U.S.C. § 1409, venue in this court is proper. The following constitutes the court's findings of fact and conclusions of law under Bankruptcy Rule 7052.

---

[1] Ms. Rohr-Metzger was not original counsel in this case. Debtors' filing attorney, Donald Little, is deceased.

1

## BACKGROUND

Debtors filed this case on February 17, 2010. First Ohio Credit was listed as an unsecured creditor on Schedule F. In response to question four in the Statement of Financial Affairs, Debtors acknowledged First Ohio filed a prepetition civil lawsuit against them.

First Ohio sued Debtors in Canton Municipal Court in September 2009, obtained summary judgment on November 9, 2009, and filed a judgment lien on November 16, 2009. Debtors deny knowledge of the judgment lien at the time of filing their bankruptcy case. Debtors' case was deemed a no-asset case and they received a discharge on June 9, 2010. First Ohio renewed its judgment lien in 2014 and 2019.

Debtors reopened their case on September 1, 2020 and filed a motion to avoid the First Ohio lien on September 2, 2020. First Ohio opposed the reopening and attempted avoidance.

## DISCUSSION

Debtors seek to avoid First Ohio's judgment lien under 11 U.S.C. § 522(f), contending it impaired their homestead exemption at the time they filed their bankruptcy case. In opposition, First Ohio argues laches prevents their decade-late avoidance attempt. Although the Sixth Circuit Court of Appeals has not spoken directly on this issue, the Bankruptcy Appellate Panel has addressed laches in the context of reopening for the purpose of belated avoidance.[2] In re McCoy, 560 B.R. 684 (B.A.P. 6th Cir. 2016); In re Yonish, 2016 WL 832587 (B.A.P. 6th Cir. 2016).

The BAP acknowledges lien avoidance constitutes cause for reopening because it accords relief to the debtor. 11 U.S.C. § 350(b); McCoy at 688 (citations omitted). Since Rule 5010 does not establish a time limit for a debtor to reopen a case in order to avoid a lien, the BAP determined the appropriate inquiry is 'whether the delay associated with the reopening of the case is accompanied by a demonstration of prejudice to the creditor as a result of the debtor's conduct.' Id. (citing In re Tarkington, 301 B.R. 502, 507 (Bankr. E.D. Tenn. 2003) (quotation omitted)). Thus, First Ohio cannot rely solely on the passage of time, it must also show Debtors' delay was prejudicial to stop their attempt to avoid the lien.

Debtors' failure to identify the lien at the time the case was filed is particularly troublesome. Debtors do not dispute that the lien existed at the time they filed their bankruptcy case and there is no suggestion it was not properly recorded. Not only were the records available through a simple online search of county records, electronic services providing public record searches were also available. Courts acknowledge the importance of lien searches. For example, in analyzing whether sanctions should be imposed on counsel under 11 U.S.C. § 707(b)(4)(C), one court considered whether "the attorney employ[ed] such external verification tools as were available and not time or cost prohibitive (e.g., on-line real estate title compilations, on-line lien

---

2 Most cases discuss laches in connection with a motion to reopen. Since the case was reopened as a matter of course before First Ohio had opportunity to respond, the court will determine whether laches prevents Debtors from proceeding on the avoidance motion using considerations as a motion to reopen.

search, tax "scripts")." In re Withrow, 391 B.R. 217, 228 (Bankr. D. Mass 2008). Counsel in another case forfeited fees because of his failure to verify lien information provided by the debtors. In re Dean, 401 B.R. 917 (Bankr. D. Idaho 2008).

The importance of an attorney's prepetition due diligence, including lien searches, cannot be understated. Per Bankruptcy Rule 9011(b), a petition presented to the court certifies the representations contained therein are presented "to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances." Failure to adhere to this duty may open counsel to sanctions. Rule 9011(b) is enhanced by newer Code provisions, including 11 U.S.C. § 707(b)(4)(C)(i)[3] (signature of counsel certifies s/he "performed a reasonable investigation into the circumstances that gave rise to the petition [and it is] well grounded in fact") and § 707(b)(4)(D) (specifying the signature is "a certification that the attorney has no knowledge after an inquiry that the information in the schedules filed with such petition is incorrect"). An attorney has a clear duty to make a reasonable investigation into the facts contained in the petition, schedules and other pleadings presented to the court. What is reasonable is driven by the facts and circumstances of the case. In re Parikh, 508 B.R. 572, 585 (Bankr. E.D.N.Y. 2014) (citing Cooter & Gell v. Harmarx Corp., 496 U.S. 384, 404, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)).

Debtors listed the underlying civil lawsuit and the judgment they "believed" First Ohio obtained. Since they owned real estate, a lien check should have been perfunctory. Accord Tarkington, 301 B.R. at 508 ("It is not unreasonable to expect that the Debtors' attorney should have checked to see if, in fact, the Credit Union had recorded the final judgment, and thus, created a judgment lien that the Debtors could have sought to avoid during the approximately twenty-two months pendency of their Chapter 7 case.")

The failure to conduct a simple lien search, especially in light of knowledge of a lawsuit against a debtor who owns real estate, does not satisfy the "reasonable investigation" requirement. Knowledge of a lawsuit provides notice that additional investigation may be necessary. For example, the Ninth Circuit BAP affirmed a bankruptcy court's order imposing sanctions on an attorney who listed a debtor's state court action on a promissory note but never listed the promissory note as an asset. Orton v. Hoffman (In re Kayne), 453 B.R. 372 (B.A.P. 9th Cir. 2011). Moreover, case law amply supports a higher investigative obligation when an attorney has special knowledge of a fact or issue. Dean, 401 B.R. 917 (sanctioning attorney for not checking status of lien on motor home title after referring them to an attorney to place a lien on the title); In re Parikh, 508 B.R. 762 (citing counsel's failure to review a previous, recently-filed chapter 13 petition and schedules when filing a new chapter 7 petition); In re Alessandro, 2010 WL 3522255 (Bankr. S.D.N.Y. 2010) (ordering disgorgement of attorney who accepted debtor's word and failed to check PACER to find client's five previous bankruptcy filings prior to filing an emergency new case to stop a foreclosure).

---

[3] National bankruptcy form B1, signed by Attorney Little, contained the following disclaimer: "In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect."

Debtors failed to disclose the lien and to take timely action to avoid it. Even if they were not personally aware of the lien in 2009, and fault rests with their attorney, they are bound by his act or omission. Dreier v. Love (In re Love), 3 Fed.Appx. 497, 498 (6th Cir. 2001) (unpublished) (citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 396–97, 113 S.Ct. 1489 (1993). In discussing a client's accountability for the actions of counsel, the Supreme Court reasoned

> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney."

Id. at 396 (quoting Link v. Wabash R. Co., 370 U.S. 626, 633-34 (1962) (quoting Smith v. Ayer, 101 U.S. 320, 326 (1880)).

Debtors are fully responsible for the failure to locate and list the lien in their schedules when they filed their case in 2010. Attempting to avoid it over ten years later because of the original failure to conduct a reasonable investigation of the lawsuit identified in their schedules is prejudicial to First Ohio.

Since discharge, First Ohio claims it responded to two title searches inquiring about the balance of the lien, one in 2017 and one this year. Although Debtors deny knowledge of the lien, they did refinance their mortgage in 2017, the date of the first inquiry, making their lack of knowledge of the lien surprising. Debtors contend they learned of the lien this year in connection with another refinance.

In the period between the bankruptcy case and the present motion, First Ohio has incurred additional costs to maintain the lien, renewing it twice. It has spent resources maintaining records of the loan and accruing interest for the past decade. It responded to two inquiries following title searches in 2017 and 2019 and is defending itself now. Additionally, First Ohio also points out the difficulty in now assessing avoidance. It would have to obtain a valuation of the property as of the date of filing, as well as the balance of other liens as of that date. None of the prejudicial time or cost would have been expended had Debtors been diligent in their initial bankruptcy filing.

Debtors offer several counterpoints. They state that First Ohio's expenses would have been incurred regardless because the judgment is also against a non-debtor third party, lessening any prejudice to First Ohio. Although they do not deny there may be some additional expense to determine avoidance a decade later, they offer to mitigate the expenses. They contend they only became aware of the lien through a title search in 2019. Debtors' counterpoints recognize the implicit prejudice to First Ohio but ask the court to balance the equities. There is no requirement

to do so. First Ohio demonstrated prejudice as well as unacceptable delay and therefore met its burden of proof.

## **CONCLUSION**

The court finds that First Ohio was prejudiced by more than the passage of time. It bears no culpability for the delay, has expended time and money renewing the lien over the past ten years, and would face challenges in obtaining values from ten-plus years ago to defend the avoidance action.

Debtors' motion to avoid the lien is barred by laches and will be denied by a separate order to be entered immediately.

# # #

**Service List:**

Nicole L. Rohr-Metzger
Thrush & Rohr LLC
4410 22nd Street NW
Canton, OH 44708

Stephen A. Ginella, Jr.
3600 Cleveland Ave., N.W.
Suite 6
Canton, OH 44709

5

10-60520-rk    Doc 24    FILED 02/02/21    ENTERED 02/02/21 13:56:31    Page 5 of 5